IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOEL HOLLEY,

        Plaintiff,                      No. CIV S-10-0615 MCE EFB P

    vs.

GARY SWARTHOUT, et al.,

        Defendants.               FINDINGS AND RECOMMENDATIONS

                              /

        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. He claims that officials at California State Prison, Solano, have a pattern of imposing systematic race-based lockdowns and/or modified programs, thereby denying plaintiff equal protection in violation of the Fourteenth Amendment. Pending before the court are: (1) defendants Fox, Swarthout, Torres, Kesterson, Singh, Sisto, and Rogers's motions to dismiss for failure to exhaust administrative remedies and for failure to state a claim pursuant to Federal Rules of Civil Procedure ("Rule") 12(b) and 12(b)(6) (Docket Nos. 35, 42, 52); and (2) plaintiff's motion for default judgment against defendant Rogers (Docket No. 40). For the reasons stated below, the court recommends that defendants' motions be granted to the extent that the complaint fails to state a claim against defendant Singh, but denied in all other respects, and that plaintiff's motion for default judgment be denied.

1

## I.  Background

Plaintiff's March 16, 2010 complaint alleges an equal protection claim based on allegations that prison officials at California State Prison, Solano have a policy and practice of imposing discriminatory race-based lookdowns. Dckt. No. 1 at 5, 8 (alleging "defendants [have] refused to adhere to [a] court order dated May 13, 2009," mandating that such practices stop). In support of this claim, plaintiff describes two alleged instances of race-based lockdowns. The first allegedly began on June 16, 2009, and the second on December 24, 2009.

Plaintiff alleges that on June 16, 2009, there was a fight between five black and Northern Hispanic inmates. As a result, the five inmates involved in the fight were placed in administrative segregation. Afterward, all other black and Hispanic inmates, including plaintiff, who is black, were subjected to a "Modified Program" from June 16, 2009 until July 15, 2009. Plaintiff alleges he was placed under this modified program solely because of his race. He claims he was confined to his cell for 24 hours a day, and lost "all rights and privileges."

Attached to the complaint is a copy of the Program Status Report signed by Warden Haviland, reflecting the initial plan of operation for this modified program. Dckt. No. 1, Ex. A. Also attached to the complaint is a copy of the Program Status Report, prepared by Captain Fox, and signed by Warden Haviland, reflecting the July 14, 2009 update to the plan of operation for the modified program. *Id.*, Ex. B. Plaintiff alleges that Kesterson, Sisto, and Torres "wrongfully endorse[d] this race based lockdown[ ]," that "defendants knowingly [and] willfully condone [ ] racial discrimination practices," and that "defendants [did not] exercise their supervisory responsibility and prevent the erroneous lockdowns . . . ." *Id.*, ¶¶ 24, 25, 27.

Plaintiff also includes copies of the administrative appeal he filed after implementation of this modified program. In the appeal, plaintiff requested that "prison officials here at CSP-Solano 'cease and desist immediately' race based lockdowns and manage[ ] inmates based upon individual behavior and not perceived ethnicity . . . ." *Id.*, Ex. H. At the first level of review, Lieutenant Rogers interviewed plaintiff and Associate Warden Singh responded by partially

2

granting the appeal. *Id.* Plaintiff alleges that Rogers claimed "he did not have to obey any court order and that he [would] not desist and cease racial based lock downs." *Id.*, ¶ 21. At the second level of review, Warden Swarthout responded, stating that "Appellant's request to have the policy of locking down Inmates because of the color of their skin discontinued is **denied**." *Id.*, Ex. H. The response to plaintiff's appeal at the Director's level of review informed plaintiff that his appeal was denied. *Id.* It also acknowledged "that the CDCR policy is that when there is an incident involving any race, all inmates of that race are locked up." *Id.*

Plaintiff also alleges that on December 24, 2009, there was an incident involving twelve Asian inmates and one black inmate. He alleges it was known by the next day that no other black inmate was involved in the incident, yet "CSP-Solano Administration kept all black and Asian inmates on lock down for approximately 10 extra[ ] days, and only release[d] them to chow and medication . . . ." *Id.*, ¶16. Plaintiff identifies Captain Fox, Lieutenant Rogers, Captain Kesterson, and Wardens Swarthout and Haviland, as those who made the decision to keep black inmates on lockdown for ten additional days. *Id.*, ¶ 18. Attached to the complaint is a copy of the Program Status Report, prepared by Lieutenant Torres and signed by Warden Swarthout, reflecting a December 30, 2009 update to the plan of operation for this modified program. *Id.*, Ex. F. It indicates that Warden Swarthout "approved the modified program of all Black and Asian/Other inmates effective 12/24/2009." *Id.*

Plaintiff alleges Swarthout, Rogers, Kesterson, Sisto and Torres "wrongfully employed racially discriminatory lockdown practices . . . ." *Id.*, ¶ 27. He also states that Swarthout "and his administration" at CSP-Solano, "ethnically discriminate" against plaintiff through race based lookdowns, and that the administration has a policy of imposing a "segregated atmosphere with loss of all rights and/or privileges for [an indeterminate] amount of time . . ." *Id.*, Ex. I at ¶¶ 2, 9. According to plaintiff, "CSP-Solano Administrators" have "a pattern of systematic racial based lock downs even when the emergency has been defused," and "defendants [have] refused to

////

3

1  adhere to [a] court order" that they cease and desist immediately race based lockdowns. *Id.*,
2  ¶¶ 14-16.
3      In their motions to dismiss, defendants argue that plaintiff failed to exhaust his
4  administrative remedies as to his challenge to the December 2009 modified program and that
5  plaintiff's remaining allegations fail to state a claim upon which relief may be granted. *See*
6  Dckt. Nos. 32, 42, 52.

7  **II.  Exhaustion Under The PLRA**

8      The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought
9  with respect to prison conditions [under section 1983 of this title] until such administrative
10 remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Prison conditions" subject to
11 the exhaustion requirement have been defined broadly as "the effects of actions by government
12 officials on the lives of persons confined in prison . . . ." 18 U.S.C. § 3626(g)(2); *Smith v.*
13 *Zachary*, 255 F.3d 446, 449 (7th Cir. 2001); *see also Lawrence v. Goord*, 304 F.3d 198, 200 (2d
14 Cir. 2002). To satisfy the exhaustion requirement, a grievance must alert prison officials to the
15 claims the plaintiff has included in the complaint, but need only provide the level of detail
16 required by the grievance system itself. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v.*
17 *Nussle*, 534 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials
18 "time and opportunity to address complaints internally before allowing the initiation of a federal
19 case").

20     Prisoners who file grievances must use a form provided by the California Department of
21 Corrections and Rehabilitation, which instructs the inmate to describe the problem and outline
22 the action requested. The grievance process, as defined by California regulations, has three
23 levels of review to address an inmate's claims, subject to certain exceptions. *See* Cal. Code
24 Regs. tit. 15, § 3084.7. Administrative procedures generally are exhausted once a plaintiff has
25 received a "Director's Level Decision," or third level review, with respect to his issues or claims.
26 *Id.* § 3084.1(b).

4

1    Proper exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731,
2 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other
3 critical procedural rules[.]" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). For a remedy to be
4 "available," there must be the "possibility of some relief. . . ." *Booth*, 532 U.S. at 738. Relying
5 on *Booth*, the Ninth Circuit has held:

> [A] prisoner need not press on to exhaust further levels of review once he has
> received all "available" remedies at an intermediate level of review or has been
> reliably informed by an administrator that no remedies are available.

*Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

9    Although a motion to dismiss for failure to exhaust administrative remedies prior to filing
10 suit is normally brought under Rule 12(b) of the Federal Rules of Civil Procedure, when ruling
11 on such a motion requires the court to look beyond the pleadings in the context of disputed
12 issues of fact the court must do so under "a procedure closely analogous to summary judgment."
13 *Wyatt v. Terhune*, 315 F.3d 1108, 1119, n.14 (9th Cir. 2003). Because care must be taken not to
14 resolve credibility on paper as it pertains to disputed issues of material fact, the undersigned
15 applies the Rule 56 standards to exhaustion motions that require consideration of materials
16 extrinsic to the complaint. *See Chatman v. Felker*, No. Civ. S-06-2912 LKK EFB, 2010 WL
17 3431806, at *2-3 (E.D. Cal. Aug. 31, 2010).

18    Defendants bear the burden of proving plaintiff's failure to exhaust. *Wyatt*, 315 F.3d at
19 1119. To bear this burden:

> a defendant must demonstrate that pertinent relief remained available, whether at
> unexhausted levels of the grievance process or through awaiting the results of the
> relief already granted as a result of that process. Relevant evidence in so
> demonstrating would include statutes, regulations, and other official directives
> that explain the scope of the administrative review process; documentary or
> testimonial evidence from prison officials who administer the review process; and
> information provided to the prisoner concerning the operation of the grievance
> procedure in this case . . . . With regard to the latter category of evidence,
> information provided [to] the prisoner is pertinent because it informs our
> determination of whether relief was, as a practical matter, "available."

*Brown*, 422 F.3d at 936-37 (citations omitted).

5

On November 1, 2010, the court advised plaintiff of the requirements for opposing a motion to dismiss for failure to exhaust available administrative remedies as well as a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988); *Wyatt,* 315 F.3d at 1120, n.14.

### III.     Rule 12(b)(6) Standards

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The court may

consider facts established by exhibits attached to the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). The court may also consider facts which may be judicially noticed, *Mullis v. U.S. Bankr. Ct.*, 828 F.2d at 1388, and matters of public record, including pleadings, orders, and other papers filed with the court. *Mack v. South Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985). However, the court's liberal interpretation of a pro se litigant's pleading may not supply essential elements of a claim that are not plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994). The court need not accept unreasonable inferences, or unwarranted deductions of fact. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). A pro se litigant is, however, entitled to notice of the deficiencies in the complaint and an opportunity to amend, unless the complaint's deficiencies could not be cured by amendment. *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

**IV. Discussion**

    **A. Exhaustion**

Defendants Fox, Swarthout and Torres previously moved to dismiss on the grounds that plaintiff did not exhaust his administrative remedies regarding the second modified program before filing suit, and that without those allegations, the remaining allegations failed to state a claim upon which relief may be granted. Dckt. No. 18. On September 1, 2011, the undersigned issued findings and recommendations recommending the motion to dismiss be denied. Dckt. No. 48. The undersigned made the following findings:

////

    Pointing to exhibits filed with plaintiff's complaint, defendants note that plaintiff filed an appeal, log number SOL-09-01421, relating to the first alleged lockdown. Dckt. No. 18 at 2 (citing to Dckt. No. 1, Exs. G, H). According to defendants, this appeal appears to have exhausted plaintiff's administrative remedies only as to plaintiff's allegations regarding the first lockdown. Dckt. No. 18 at 2; *see also* Dckt. No. 1, Ex. H (December 7, 2009 Director's Level Appeal Decision regarding appeal number SOL-09-01421).

    In appeal number SOL-09-01421, plaintiff requested that prison officials at California State Prison, Solano "'cease and desist immediately' race based lockdowns and manage[ ] inmates based upon individual behavior and not perceived ethnicity." Dckt. No. 1, Ex. H. Plaintiff complained that such lockdowns violated his constitutional right to due process and equal protection, as well as various court orders, including a May 13, 2009 order, specifically directing officials at California State Prison, Solano to stop imposing lookdowns based on race. *Id.* Plaintiff stated that prison officials "totally ignore this order and continue [to] lockdown black inmates upon perceived ethnicity." *Id.* ("Attached Sheet, continued from Section A"). Defendants do not address why this appeal was not sufficient to apprise the prison of the wrong for which plaintiff seeks redress – the alleged policy and practice of imposing lockdowns based on race. *See Griffin v. Arpaio*, 557 F.3d 1117, 1121 (9th Cir. 2009) ("The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation."); *see* Dckt. No. 18 at 2 (noting only that appeal number SOL-09-01421 "is not the subject of" their motion).

Dckt. No. 48 at 4-5 (footnote omitted).

  Based on this record, the undersigned found that defendants had "failed to satisfy their burden of proving the absence of exhaustion" and noted that "a plaintiff is not always required to exhaust administrative remedies for every individual event alleged in a complaint." *Id.* at 5. The defendants' failure to state a claim arguments was rejected because the arguments depended on the success of their failure to exhaust argument. *Id.* The undersigned recommended that defendants' motion to dismiss therefore be denied. *Id.* at 5-6.

  Defendants Fox, Swarthout and Torres objected to the findings and recommendations. Dckt. No. 50. The district judge noted that through their objections, defendants had "attempted to rectify their failure to address whether Plaintiff's first appeal was sufficient to exhaust his administrative remedies as to all of his claims . . . ." Dckt. No. 51 at 2. The district judge declined "to address those belated arguments until they have been properly briefed before the magistrate judge in the first instance," adopted the findings and recommendations in full, and

denied defendants' motion to dismiss. *Id.*

After the district judge denied their first motion to dismiss, defendants Fox, Swarthout and Torres filed the instant motion to dismiss "in order to address the issue of whether the administrative appeal regarding the first modified program exhausted [plaintiff]'s administrative remedies regarding the second modified program." Dckt. No. 52 at 2. They contend their motion should be granted because (1) plaintiff failed to exhaust CDCR's administrative grievance process before filing this action, and (2) plaintiff's administrative appeal regarding the first modified program (i.e. lockdown) did not exhaust his administrative remedies regarding the second modified program. In support of their motion, they submit (1) the declaration of S. Cervantes, Appeals Coordinator at California State Prison, Solano ("Cervantes Decl."), and (2) the declaration of D. Foston, Chief of the Inmate Appeals Branch for the California Department of Corrections and Rehabilitation ("Foston Decl.").[1]

Defendants argue that plaintiff's claim regarding the December 2009 modified program must be dismissed as unexhausted. Defendants submit evidence that plaintiff filed an administrative appeal following the December 2009 modified program, and that at the time plaintiff filed this lawsuit, that appeal had not yet been resolved at the final level of review. *See* Cervantes Decl. ¶ 4, Ex. A; Foston Decl. ¶ 3. Were this a complete record of plaintiff's administrative appeal history, it might be sufficient to show that plaintiff's claim regarding the December 2009 modified lockdown was not exhausted prior to filing suit. As discussed below, however, it is not a complete record of plaintiff's administrative appeal history.

/////

---

[1] Defendants Kesterson, Singh, Sisto, and Rogers also move to dismiss as unexhausted any claim based on the December 2009 modified program. *See* Dckt. No. 35, 42. Their exhaustion argument is identical to that raised in the January 24, 2011 motion to dismiss filed by Fox, Swarthout and Torres. *See* Dckt. No. 35 at 2 n.1; Dckt. No. 42 at 2 n.1. For the reasons stated in the September 1, 2011 findings and recommendations recommending denial of that motion to dismiss, and for the reasons stated herein, the undersigned concludes that these defendants have not satisfied their burden of proving the absence of exhaustion.

1       Plaintiff's claim is that California State Prison, Solano's policy of imposing race-based
2  lockdowns – beginning with the June 2009 modified program – violates his equal protection
3  rights under the Fourteenth Amendment.  Defendants concede that plaintiff filed an
4  administrative appeal following the June 2009 modified program, and that it was exhausted at
5  the Director's Level on December 7, 2009, before plaintiff filed this lawsuit.  Dckt. No. 52 at 6.
6  In the appeal, plaintiff complained that prison officials "continue to lockdown black inmates
7  upon perceived ethnicity."  Dckt. No. 1, Ex. H.  Plaintiff also requested that prison officials stop
8  their practice of locking down inmates on the basis of race.  *Id.*  As evidenced by their response
9  to the appeal, prison officials understood it as a request for them to "stop using race as a basis for
10 locking down the inmate population . . . ."  *Id.* (Director's Level response, dated December 7,
11 2009).  Prison officials denied the appeal at the final level of review and in doing so, stated that
12 "the CDCR policy is that when there is an incident involving any race, all inmates of that race
13 are locked up."  *Id.*

14      The undersigned finds that this appeal afforded prison officials "time and opportunity" to
15 address plaintiff's complaint that the prison had in place an unconstitutional policy of imposing
16 lockdowns on the basis of race.  *See Porter*, 534 U.S. at 524-25.  Moreover, it fulfilled the
17 "primary purpose" of a grievance –  to notify the prison of a problem.  *Griffin*, 557 F.3d at 1120.
18 The Director's level response not only confirmed that prison officials were on notice of the
19 alleged policy of race-based lockdowns about which plaintiff complained, it acknowledged the
20 existence of that policy.  Moreover, inmates are free to file administrative appeals regarding
21 either "general circumstances" or "particular episodes."  *Porter*, 534 U.S. at 530 (holding that
22 the PLRA requires exhaustion of both types of claims, as a rule requiring exhaustion as to a
23 "pattern or practice" but not as to an "isolated episode" would improperly "leave the need to
24 exhaust to the pleader's option").

25      Nevertheless, defendants contend that the this appeal could not have exhausted
26 administrative remedies as to any claim plaintiff makes regarding the December 2009 modified

10

1 lockdown. Defendants argue exhaustion of administrative remedies should be "broadly
2 required" in prisoner cases whenever an administrative remedy is "available." Dckt. No. 52 at 6.
3 But this argument ignores the fact that at the final level of administrative review, prison officials
4 denied plaintiff's request that they end their practice of locking down inmates because of their
5 race. That was a final and definitive statement by the prison officials on the issue and it, in
6 effect, told plaintiff that no administrative relief was "available" for his claim that race based
7 lockdowns are unlawful. Because plaintiff exhausted the administrative processes available to
8 him, and in doing so, notified prison officials of the problem now raised in this lawsuit, he was
9 not required to initiate and complete another round of administrative appeals for the December
10 2009 race based lockdown.

11 Defendants contend that a finding of exhaustion in this case would create a new rule that
12 would allow "allegations in an administrative complaint that an unconstitutional condition of
13 confinement results from an institutional policy . . . to exhaust all future claims pertaining to
14 official actions that have not yet occurred and may not even be contemplated at the time, as long
15 as they are alleged to have resulted from the same policy or practice." Dckt. No. 52 at 6-7. To
16 the contrary, rejecting defendants' exhaustion argument here creates no such rule. Rather, the
17 prison authorities themselves informed plaintiff in writing their definitive position on the matter
18 in a document which speaks for itself.

> Therefore, the warden placed the intitution's black, and nother hsipanic inmate population on lockdown/modified program. The DLR [Director's Level of Review] notes that the CDCR policy is that when there is an incident involving any race, *all inmates of that race are locked up.*

22 Complaint, at Exh. H (Dkt No. 1, at 38 of 54) . There is no contention that the document is not
23 authentic or that it fails to speak with authority on behalf of the prison. Indeed, the document
24 recites the Department's policy and then states the argument for why the CDCR contends it is
25 constitutionally defensible. If the Department's written statements are to be taken seriously, it is
26 pointless for this inmate to return for another round of exhaustion over the same issue of race

11

based lockdowns. Nor does the Department's use of the words "program" and "modified program" as euphemisms for lockdowns based on race change the finality the Department's position. However one labels the practice, the policy is final. In short, the plaintiff presented his administrative appeal, directly raised the issue in dispute, and the prison officials' responses demonstrate quite plainly that they were made aware of and rejected plaintiff's claim and that no further administrative relief was available. Under these circumstances, plaintiff has exhausted his claim.

### B. Failure to State a Claim

Defendants contend that if the allegations pertaining to the December 24, 2009 modified program are dismissed for failure to exhaust administrative remedies, what remains are the allegations pertaining to the June 16, 2009 modified program. Defendants contend that those allegations fail to state a claim upon which relief may be granted. Dckt. No. 35 at 5-6; Dckt. No. 42 at 6-8; Dckt. No. 52 at 12-13. As discussed below, regardless of the December 2009 allegations, the allegations as to the June 2009 lockdown state a claim.

In order to state a claim under § 1983, a plaintiff must allege: (1) the violation of a federal constitutional or statutory right; and (2) that the violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). An individual defendant is not liable on a civil rights claim unless the facts establish the defendant's personal involvement in the constitutional deprivation or a causal connection between the defendant's wrongful conduct and the alleged constitutional deprivation. *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978).

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974); *see Johnson v. California*, 543 U.S. 499, 515 (2005) (holding strict scrutiny should be applied to racial classifications in prisons). To state such a claim "a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff" based upon his race. *Barren*

*v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999). However, a policy is suspect on its face when it considers race as a factor, and the inmate need not prove discriminatory intent. *Walker v. Gomez*, 370 F.3d 969, 973-74 (9th Cir. 2004).

Here, plaintiff claims that defendant Swarthout "and his administration" at CSP-Solano discriminated against plaintiff through race based lookdowns. *Id.* ¶¶ 14-16, Ex. I at ¶¶ 2, 9. He identifies defendants Kesterson, Sisto, Torres, Rogers and Swarthout as prison officials who allegedly condoned and failed to prevent the June 2009, race-based modified program. *See* Dckt. No. 1 ¶¶ 21, 24, 25, 27, Ex. H. Plaintiff also identifies defendants Fox, Rogers, Kesterson and Swarthout as prison officials who allegedly made decisions regarding the December 2009, race-based modified program. *Id.* ¶ 18. Plaintiff also names Swarthout, Rogers, Kesterson, Sisto and Torres as being responsible for the prison's allegedly discriminatory lockdown practices. *Id.* ¶ 27.

Construing the complaint liberally, as is required, the allegations are sufficient to state an equal protection claim against defendants Swarthout, Kesterson, Sisto, Torres, Rogers, and Fox. However, there are no factual allegations against defendant Singh. Plaintiff merely attaches an exhibit to his complaint showing that Singh responded to one of plaintiff's inmate appeals. As there are no allegations linking Singh to any violation of plaintiff's equal protection rights, plaintiff fails to state a claim against defendant Singh.

**V.    Plaintiff's Motion for Default Judgment**

On May 20, 2011 plaintiff filed a motion for default judgment, claiming that defendant Rogers failed to timely respond to plaintiff's complaint. Dckt. No. 40. Rogers opposed the motion, explaining that he was inadvertently omitted from the April 14, 2011 motion to dismiss, which was timely filed by defendants Kesterson, Singh, and Sisto. Dckt. No. 41. On the same day, Rogers responded to the complaint with a motion to dismiss. Dckt. No. 42.

////

////

Federal Rule of Civil Procedure 55 states:

> When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

Fed. R. Civ. P. 55(a). Under Rule 55(a), the court must enter default against a party who has "failed to plead or otherwise defend." The court also has the power to set aside the entry of default "for good cause." Fed. R. Civ. P. 55(c). The U.S. Court of Appeals for the Ninth Circuit treats the standard for good cause to set aside an entry of default under Rule 55(c) the same as the excusable neglect standard for relief from judgment under Rule 60(b)(1). *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001)); *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004).

In this case, it appears that Rogers's failure to join in the April 14, 2011 motion to dismiss was inadvertent, and that after being served with plaintiff's motion, he promptly defended through his own motion to dismiss and opposition to the instant motion for default judgment. There is also no apparent prejudice to plaintiff in declining to enter Rogers's default. The undersigned finds that justice would not be served by entering Rogers's default in these circumstances.

**VI.     Conclusion**

In accordance with the above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's May 20, 2011 motion for default judgment (Docket No. 40) be denied.

2. Defendants' Kesterson, Singh and Sisto's motion to dismiss (Docket. No. 35) be GRANTED as to plaintiff's claim against defendant Singh, and be DENIED in all other respects.

3. Defendant Rogers' motion to dismiss (Docket No. 42) be DENIED.

4. Defendants Fox, Swarthout and Torres's motion to dismiss (Docket No. 52) be DENIED.

////

  5. Defendants Kesterson, Sisto, Rogers, Fox, Swarthout, and Torres be ordered to file an answer to the complaint within the time provided in Rule 12 of the Federal Rules of Civil Procedure.

  6. Plaintiff be granted leave to file an amended complaint within 30 days of the date of an order adopting these findings and recommendations to attempt to state a claim against Singh.

  These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated: February 27, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

15